IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIDGET ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 8249 |
| v. ) | |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, ) | Maria Valdez |
| acting commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bridget Alexander ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her claim for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court grants in part Plaintiff's Motion for Summary Judgment, [Doc. No. 17], denies the Commissioner's Motion for Summary Judgment, [Doc. No. 22], and remands this case for further proceedings consistent with this Opinion.

**BACKGROUND**

I. **PROCEDURAL AND FACTUAL HISTORY**[1]

Plaintiff previously worked as a food service worker and housekeeper. Over the years, she developed myriad psychological issues ranging from depression to anxiety. Unfortunately, by 2011, these conditions deteriorated to the point of requiring occasional hospitalization and regular therapy, and Plaintiff thus found herself unable to work. Accordingly, on April 7, 2011, she filed a Title II application for SSDI benefits as well as a Title XVI application for SSI, alleging a disability onset date of February 28, 2011. Her application was denied initially and upon reconsideration. Plaintiff thus requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined that she was not disabled at Step Four of the Social Security Administration's sequential analysis.

In her opinion, the ALJ found that Plaintiff suffered from the following severe impairments: asthma and depression. After determining that Plaintiff did not meet any listed impairment, the ALJ then calculated her Residual Functional Capacity ("RFC") and found that she could perform medium work with the following exceptions: she should carry 50 pounds only occasionally but 25 pounds frequently; she should walk, stand, and sit no more than six hours in an eight hour day with normal breaks; no working at heights, climbing ladders, or frequently climbing stairs; she should avoid concentrated exposure to fumes, dust, odors, gases, and poorly ventilated areas, as well as wet or humid environments and extreme

---

[1] The following facts from the parties' submissions are undisputed unless otherwise noted.

temperatures; no operating moving or dangerous machinery; work should be limited to jobs not requiring detailed, complex, tasks, and not involve intense focus and concentration for extended periods; and she should be off-task no more than 4% of the time in an eight-hour workday.

The ALJ then consulted with a Vocational Expert ("VE") to determine if Plaintiff could perform her past relevant work or any jobs in the national economy. On the basis of her RFC assessment and the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work and thus found that she was not disabled under the Social Security Act.

## **STANDARD OF REVIEW**

**I.**     **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ conducts a five-step analysis and considers the following in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Under this standard, the ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Rather, the ALJ must simply "build an accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

A court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841. Thus, where conflicting evidence would allow reasonable minds to differ, the court must defer to the decision of the Commissioner. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## **DISCUSSION**

On appeal, Plaintiff argues that the ALJ's decision is neither supported by substantial evidence nor based upon proper legal standards, challenging the following: (1) the ALJ's analysis of the medical evidence, particularly Plaintiff's anxiety and panic attacks; (2) the relative weight given to Plaintiff's treating physicians' opinions; (3) the ALJ's RFC calculation; and (4) the ALJ's credibility finding. Because the Court finds the ALJ's treatment of Plaintiff's treating physicians to be dispositive, however, it will confine its discussion to that issue only.

### I. The Treating Physician Rule

The treating physician rule requires ALJs to give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527. If the ALJ declines to do so, then he must offer "good reasons for discounting the opinion" in light of the following regulatory factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)

5

(internal quotations omitted); 20 C.F.R. § 404.1527. Here, Plaintiff's psychologist, (Dr. Davis) and psychiatrist (Dr. Scott) each opined that she suffered from marked limitations in concentration, persistence, and pace. The ALJ, however, declined to give either opinion substantial weight because they were apparently inconsistent with discharge records from Madden Hospital in 2011, which indicate that Plaintiff's depression was in early partial remission. But that conclusion is problematic for several reasons.

Above all, one noted improvement does not establish that Plaintiff permanently improved or by how much. This becomes especially clear when considered in light of Plaintiff's treatment history. She has battled with depression, anxiety, and panic disorder since at least 2011. After several hospital visits, she was eventually connected to Dr. Scott in July 2011, who scored her Global Assessment of Functioning ("GAF") at 40[2] and diagnosed her with panic disorder, major depressive disorder, and learning disorder versus borderline intellect, along with several "rule out" diagnoses,[3] such as general anxiety disorder, major depressive disorder with psychotic features, and impulse control disorder. Things only worsened two months later, when Dr. Scott reaffirmed her previous diagnoses, lowered Plaintiff's GAF

---

[2] GAF scores are used to rate the social, occupational, and psychological functioning of adults. According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 31-40 entails "impairment in reality communication . . . major impairment[s] in several areas such as work or school, family relations, judgment, thinking, or mood. . . or inability to function in almost all areas." *Diagnostic and Statistical Manual for Mental Disorders*, 34 (4th ed. rev. 2000).

[3] A "rule out" diagnosis indicates the presence of a particular disorder, but requires further testing to rule out other potential causes.

score to 35, and sent her to the ER because she believed that Plaintiff posed a danger to herself.

The following day, Plaintiff went to back to Stroger Hospital, where she was again diagnosed with major depressive disorder and had her GAF scored at 30. She was then admitted to Madden Hospital for ten days and placed in a treatment-intensive environment, after which she was deemed to be no longer a danger to herself. She subsequently began group therapy with Dr. Davis, who affirmed Dr. Scott's diagnoses and repeatedly noted that Plaintiff was at risk for suicide.

Somewhere in this mix the ALJ found improvement, perhaps because Plaintiff's discharge records from Madden indicate such. But it is really no surprise that Plaintiff improved temporarily after being held in a highly-structured environment where she was constantly monitored and treated. That environment, however, does not mirror the workplace, which might explain why Dr. Scott and Dr. Davis separately opined four months after her release that Plaintiff's mental state had again deteriorated to the point of precluding her from maintaining competitive employment. Indeed, given the environmentally-sensitive nature of Plaintiff's depression, anxiety, and panic disorder, the Court is puzzled by the ALJ's finding that Dr. Davis's and Dr. Scott's opinions are rendered inconsistent by Plaintiff's "improvement" following her release from intensive care. There is therefore nothing inconsistent about their opinions.[4]

---

[4] And yet, even with the realm of Plaintiff's fluctuating mental health, there was, in fact, a constant: since June 2011, Plaintiff's GAF score never surpassed 45 and often vacillated around 35, which means she was rarely outside of the "marked impairments" zone.

7

The Court is equally troubled by the ALJ's suggestion that Dr. Scott's and Dr. Davis's opinions are somehow rendered less persuasive because they were derived largely from Plaintiff's subjective complaints. The Court is unaware of, and the Commissioner has not suggested, any objective test for depression or anxiety that Plaintiff's treating doctors should have administered. Instead, we have to rely on the findings of medical experts who are experienced with diagnosing and treating mental disorders. Here, we have Plaintiff's doctors,[5] who each have a thorough treatment relationship with Plaintiff and who both opined that (1) she had marked limitations in concentration, persistence, and pace and that (2) she could not function in a competitive work environment because of her anxiety, depression, panic disorder, and the like. Their opinions are both well-founded and consistent, and they should therefore not be discounted so easily.[6] *See* SSR 96-7p.

Based on its conclusion that remand is necessary for the above reasons, the Court declines to explore in detail the remaining errors claimed by Plaintiff. That said, the Commissioner should not assume the remaining issues were omitted because no error was found. Plaintiff may raise those issues to the ALJ on remand.

---

[5] The Court is mindful that there are other physician's opinions on record; namely, the CE and state agency reviewing physician, who found that Plaintiff suffered from either moderate or mild difficulties in concentration, persistence, and pace. But the CE and reviewing physician completed their exam/review before Plaintiff even began seeing Dr. Scott and Dr. Davis. The agency physicians' opinions thus do not present a longitudinal, or recent, picture of Plaintiff's mental impairments.

[6] The ALJ may, of course, find other reasons to discount Plaintiff's treating physicians, but she must articulate them. *See Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002) ("Regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

## CONCLUSION

For the reasons set forth above, the Court grants in part Plaintiff's Motion for Summary Judgment [Doc. No. 17], denies the Commissioner's Motion for Summary Judgment [Doc. No. 22], and remands this case to the Commissioner for further proceedings consistent with this Opinion.

**SO ORDERED.**  **ENTERED:**

**DATE:** **September 1, 2015**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**